**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3038
_____

RONALD E. MUTH,
                                        Appellant

v.

DENNIS A. WOODRING;
JEFFERY M. SHRIVER;
CITY OF HARRISBURG PENNSYLVANIA;
DAUPHIN COUNTY;
STATE FARM FIRE AND CASUALTY COMPANY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 1:14-cv-01798)
District Judge: Hon. Yvette Kane
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 4, 2018
_____

Before: SHWARTZ, SCIRICA, and ROTH, <u>Circuit Judges</u>.

(Filed: November 15, 2018)

_____

OPINION[*]
_____

_____

   [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Plaintiff Ronald Muth appeals the District Court's orders granting Defendants Dennis Woodring, Dauphin County, and State Farm Fire and Casualty Insurance Company's ("State Farm") motions to dismiss, and granting Defendants Jeffery Schriver and the City of Harrisburg's ("Harrisburg") motion for judgment on the pleadings. Because the District Court's orders were proper, we will affirm.

I[1]

A

In June 2009, firefighters responded to a fire at a house Muth owned. Woodring, a detective from Dauphin County's Criminal Investigation Unit, and Schriver, a detective from the Harrisburg Bureau of Police, investigated the fire. Woodring and Schriver made various observations regarding the condition of the house, possible energy sources, electrical outlets and activity, fire patterns, the absence of accelerant, and potential causes. Both learned that a neighbor saw a white male wearing a green t-shirt and driving a red vehicle at the house before the fire. Schriver also learned that law enforcement had recently raided the home and arrested the occupants. Both investigators concluded there were no accidental causes for the fire and the fire was an arson. The

---

[1] We draw the factual background largely from the allegations contained in the complaint, which we accept as true. Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 166 (3d Cir. 2016) (citation omitted). We also consider exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon such documents. Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted).

2

same day, Schriver interviewed Muth, who said he was at the property earlier that evening for the scheduled installation of a new hot water heater, that he did not have keys to the house, that his tenants were not home or answering his calls, and that when he was unable to reach his tenants, he left. Five days later, a representative from State Farm, Muth's insurer, investigated the fire scene, noting Woodring's conclusions and agreeing that the fire was non-electrical and "deliberately set on the sofa."

In October 2009, "Muth was charged with (1) Arson Endangering Persons (Felony 1), 18 PA. [Cons. Stat.] § 3301(a)(1)(i); (2) Causing or Risking Catastrophe (Felony 3), 18 Pa. [Cons. Stat.] § 3302(b); and (3) Insurance Fraud (Felony 3), 18 Pa. [Con. Stat.] § 4117(a)(2)," and a warrant was issued for his arrest. Muth was arrested at work, arraigned, and released on a $50,000 unsecured bail bond. Three days later, Schriver received information from State Farm about its investigation in accordance with 18 Pa. Cons. Stat. §§ 1610.3-.4.

In October 2012, the Court of Common Pleas granted the Commonwealth's application for Nolle Prosequi and dismissed the criminal charges against Muth.

B

Muth brought suit, asserting claims for malicious prosecution under the Fourth and Fourteenth Amendments against Woodring and Schriver; conspiracy to violate the Fourth and Fourteenth Amendments against Woodring, Schriver, and State Farm; and municipal liability for violations of the Fourth and Fourteenth Amendments against Dauphin County and the City of Harrisburg. In response, Defendants filed motions under Federal Rule of Civil Procedure 12(b)(6) or 12(c).

3

The District Court granted State Farm's motion to dismiss and granted in part Schriver and Harrisburg's motion to dismiss. Muth v. Woodring, No. 1:14-cv-01798, 2015 WL 7717123, at *1 (M.D. Pa. Nov. 30, 2015). The Court dismissed Muth's conspiracy claim, finding that he "failed to allege sufficient factual matter from which a conspiratorial agreement can be inferred between State Farm and the Individual Defendants," id. at *13, and dismissed Muth's municipal liability claim against Harrisburg, finding Muth failed to identify any prior constitutional violations in arson arrests to establish deliberate indifference, id. at *14-16. The Court, however, denied Schriver qualified immunity on Muth's malicious prosecution claim. Id. at *12.

Schriver appealed and we remanded to the District Court for further consideration of whether Defendants violated Muth's clearly established right that barred Schriver from obtaining qualified immunity. See Muth v. Woodring, 666 F. App'x 137, 139-40 (3d Cir. 2016).

On remand, the District Court concluded that Schriver was entitled to qualified immunity because he did not violate a clearly established constitutional right. See Muth v. Woodring, Civ. No. 1:14-cv-01798, 2017 WL 3537393, at *1, *4-5 (M.D. Pa. Aug. 17, 2017). The Court found that Schriver made a reasonable probable cause determination that the fire was arson based on the facts known, consultation with other officers, and then-accepted fire investigation methods, id. at *4, and there was "no precedent putting him on notice that such a determination, in the specific context of this case, was unlawful," id. at *5. Applying the same rationale, the Court concluded that Woodring was also entitled to qualified immunity. Id. Consistent with its rulings concerning

4

Shriver, State Farm, and Harrisburg, the Court also granted judgment on the pleadings for Woodring on the conspiracy claim and Dauphin County on the municipal liability claim. Id. Muth appeals.

II[2]

A

We exercise plenary review over a district court's order granting a motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c), Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010) (citation omitted), and we apply the same standard for both motions, Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 146-47 (3d Cir. 2013). The standard requires us to decide whether the complaint, construed "in the light most favorable to the plaintiff," Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (citation and internal quotation marks omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012) (citations omitted).

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

5

B

1

We will first consider whether Woodring and Schriver are entitled to qualified immunity on Muth's malicious prosecution claim. Muth argues that Woodring and Schriver initiated a prosecution without probable cause, and therefore are not immune from liability on his § 1983 claim.[3] We disagree.

Section 1983 is a "mechanism to vindicate" federal statutory or constitutional rights that have been violated by individuals acting under the color of law. Black v. Montgomery County, 835 F.3d 358, 364 (3d Cir. 2016). Qualified immunity shields government officials from civil liability on such claims "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To assess this defense, we ask: (1) whether defendant's conduct violated a statutory or constitutional right, and (2) whether the right at issue was clearly established when the defendant's conduct occurred. Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). This analysis is informed by "only the facts that were knowable to the defendant officers." White v. Pauly, 137 S. Ct. 548, 505 (2017) (citation omitted). As explained below, the right Muth claims was violated was not

---

[3]Woodring is wrong to assert that Muth waived a challenge to the District Court's conclusion that Woodring is entitled to qualified immunity. Through his brief, Muth mentions both defendants collectively in his arguments about the qualified immunity ruling.

clearly established at the time of his arrest, and in any event, the facts alleged do not show that Muth's rights were violated.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). "[T]here must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).

We are not to "define clearly established law at a high level of generality," Ashcroft v. Al-Kidd, 563 U.S. 731, 742 (2011), and must instead consider the right at issue in light of the specific situation the officer faced, Mullenix, 136 S. Ct. at 308 (emphasis and citation omitted); see id. at 311 (emphasizing that a clearly established right must be considered in "the specific context of the case" (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam)).

Muth generally characterizes the right at issue as the right to be arrested only based on probable cause, but he emphasizes that Woodring and Schriver lacked probable cause due to their reliance on the negative corpus methodology for determining the cause of a fire because it "does not identify who set the fire." Appellant's Br. at 11 (emphasis omitted). Thus, we define the right asserted here as the right not to be arrested for arson

7

where probable cause to believe the individual committed the arson is based on the negative corpus methodology.

The negative corpus methodology is a method for determining the cause of a fire through a process of elimination, whereby an investigator concludes "I've eliminated everything else, so this is the cause." Fred Durso, Guided by Science, Nat'l Fire Prot. Ass'n J. (March 4, 2014), https://www.nfpa.org/news-and-research/publications/nfpa-journal/2014/march-april-2014/pov/perspectives. This methodology is a determination reached "based on the lack of evidence of an accidental cause." Schlesinger v. United States, 898 F. Supp. 2d 489, 491-92 (E.D.N.Y. 2012) (quoting 5 David L. Faigman, et al., Modern Scientific Evidence: The Law and Science of Expert Testimony § 39:65 (2011-12 ed.)).

At the time of Muth's 2009 arson arrest, "it was not so plainly obvious" that reliance on the negative corpus methodology to find probable cause violated Muth's rights. Mann v. Palmerton Area Sch. Dist., 872 F.3d 165, 174 (3d Cir. 2017). Indeed, it was not until 2011 that the National Fire Protection Association ("NFPA"), an international nonprofit organization that promotes standards for fire investigations, explicitly rejected the negative corpus methodology.[4] Thus, the use of the negative

---

[4] In 2011, the NFPA defined the negative corpus methodology as "[t]he process of determining the ignition source for a fire, by eliminating all ignition sources found, known, or believed to have been present in the area of origin, and then claiming such methodology is proof of an ignition source for which there is no evidence of its existence," and rejected the approach because it was "not consistent with the [s]cientific [m]ethod." Schlesinger, 898 F. Supp. 2d at 492 (first alteration in original) (quoting NFPA 921: Guide for Fire & Explosion Investigations § 18.6.5 (2011 ed.)).

corpus methodology was acceptable at the time of Muth's 2009 arrest. See Sipes v. Allstate Indemnity Co., 949 F. Supp. 2d 1079, 1086 (D. Colo. 2013) ("[The Investigator's] use of negative corpus, or process of elimination . . . was a generally accepted methodology that complied with NFPA 921 at the time of his investigation [in 2010]." (footnote omitted)). Moreover, the case law supported reliance on "the absence of an accidental explanation for a fire . . . as a sufficient basis for a finding of arson" and its cause. Schlesinger, 898 F. Supp. 2d at 504 (quoting Somnis v. Country Mut. Ins. Co., 840 F. Supp. 2d 1166, 1171 (D. Minn. 2012)); see also Owners Ins. Co. v. White, Civ. No. 2:12-cv-00233-WCO, 2014 WL 12461045, at *4 (N.D. Ga. Jan. 23, 2014) (rejecting negative corpus as inconsistent with NFPA but noting that an opinion based on the process of elimination when an investigator can conclude that there are no accidental causes is reasonable and legally admissible, though not scientifically admissible as an expert opinion under Federal Rule of Evidence 702); Sarro v. Philip Morris USA, Inc., 857 F. Supp. 2d 182, 186 n.3 (D. Mass. 2012) (noting that the process of elimination conforms to fire investigation protocols). Finally, even the edition of the NFPA in effect during the later period of Muth's prosecution, namely from January 2011 until the case was dismissed in October 2012, approved a process of elimination approach for determining the cause of a fire. Schlesinger, 898 F. Supp. 2d at 492, 505; see also Hickerson v. Pride Mobility Prods. Corp., 470 F.3d 1252, 1257 (8th Cir. 2006); Somnis, 840 F. Supp. 2d at 1171. Therefore, because there was no clearly established right not to be arrested for arson based upon the negative corpus methodology or a process of

9

elimination approach, the District Court did not err in granting Woodring and Shriver qualified immunity.

3

Muth's pleading also fails to state a constitutional claim for malicious prosecution, and for this additional reason, Woodring and Schriver are entitled to qualified immunity. To establish a malicious prosecution claim, a plaintiff must show that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007).

Assuming without deciding that Woodring and Schriver initiated a criminal proceeding, and since there is no dispute that the proceeding ended in Muth's favor, we next examine whether Woodring and Schriver had probable cause to initiate the prosecution. "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)). Probable cause is more than mere suspicion that an individual committed a crime, but "it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti, 71 F.3d at 482-83 (citation omitted). When a plaintiff claims that an officer lacked probable cause, we must identify any "omissions [or] assertions made knowingly, or with reckless disregard for the truth," then we must "assess whether the statements and

10

omissions made with reckless disregard of the truth were 'material, or necessary, to the finding of probable cause.'" Wilson, 212 F.3d at 789 (quoting Sherwood, 113 F.3d at 399).

To determine whether Woodring and Schriver had probable cause to charge Muth with arson, we must consider the elements of arson under Pennsylvania law. See Orsatti, 71 F.3d at 484-85. To prove arson, the Commonwealth must demonstrate: "(1) that there was a fire; (2) that it was of incendiary origin; and (3) that [the defendant] set the fire," Commonwealth v. Ford, 607 A.2d 764, 766 (Pa. Super. Ct. 1992). The affidavit of probable cause stated that: (1) there was a fire deliberately set on a couch in the house Muth owned, (2) a neighbor saw a white man in a green t-shirt who drove a red truck at the house just before the fire, which matched the description of Muth's car and the clothing he was wearing the night of the fire, (3) Muth stated that he was at the property to do maintenance and claimed he did not enter the house, and (4) Muth had difficulty selling the house and had since filed an insurance claim. Therefore, the affidavit contained facts providing a basis for a reasonable person to believe that a fire was intentionally set, that Muth was at the house shortly before the fire, that Muth had a motive to set the fire, and to thus reasonably infer that he was responsible for it. See Orsatti, 71 F.3d at 483. Moreover, none of the facts that Muth claims the affidavit omitted would have undermined the facts establishing probable cause. Muth's explanation that he was at the property to replace a hot water heater and left thereafter simply confirms that he was present on the property. His statement that his tenants were not there and he did not have keys to the property does not mean he could not gain entry.

11

Moreover, the affidavit disclosed that Muth said that he was at the property for maintenance but denied entering the house, and so Muth's claims that the affidavit omitted information on these topics was incorrect. Because probable cause existed to arrest Muth for arson, he cannot establish that he was maliciously prosecuted and thus has not shown his prosecution violated the Constitution, and for this additional reason, Woodring and Schriver were properly granted qualified immunity and the District Court correctly dismissed the § 1983 claim against them.

C

Muth also asserts the District Court erred in dismissing his conspiracy claim against Woodring, Schriver, and State Farm. A claim for civil conspiracy to commit a tort "may not exist without an underlying tort." Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000). Because there was probable cause to believe that Muth committed the arson, and he therefore fails to state a malicious prosecution claim, there is no predicate tort, and thus his conspiracy claim was correctly dismissed.

D

The District Court also properly dismissed Muth's claims against Dauphin County and Harrisburg. "[F]or there to be municipal liability, there . . . must be a violation of the [plaintiff's] constitutional rights." Startzell v. City of Philadelphia, 533 F.3d 183, 204 (3d Cir. 2008) (alterations in original) (quotation marks and citation omitted). Thus, Dauphin County and Harrisburg "cannot be vicariously liable under Monell [v. Department of Social Services, New York City, 436 U.S. 658, 694-95 (1978),] unless one

12

of [their] employees is primarily liable under section 1983 itself." <u>Williams v. West Chester</u>, 891 F.2d 458, 467 (3d Cir. 1989), <u>as amended</u> (Jan. 8, 1990).  For the reasons already discussed, because neither Woodring nor Schriver are liable, the Court correctly ruled that the City and County for which they work are also not liable.

III

For the foregoing reasons, we will affirm.