J-S40017-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA STERLING MADDOX | : | |
| | : | |
| Appellant | : | No. 1744 WDA 2018 |

Appeal from the Judgment of Sentence Entered November 13, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000662-2018

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY McLAUGHLIN, J.: FILED OCTOBER 21, 2019

Joshua Sterling Maddox ("Maddox") appeals from the judgment of sentence entered on November 13, 2018 following his convictions for arson and risking a catastrophe.[1] He challenges the sufficiency of the evidence. We affirm.

The trial court set forth the relevant facts as follows:

> [Maddox] was incarcerated at SCI Fayette on July 21, 2017 when a fire broke out in his cell.
>
> ...
>
> On July 21, 2017, Lieutenant Robert Newman was working in the Restricted Housing Unit at SCI Fayette. [N.T.,

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3301(a)(1)(i) and 18 Pa.C.S.A. § 3302(b), respectively.

11/5/18, at 39-40]. Lieutenant Newman was in his office when he was informed of a cell fire in the L Block. Id. at 42. He jumped up and went to the sergeant's office to gather additional manpower. Id. at 43.

When Lieutenant Newman arrived on the scene, he began directing first responders to put out the fire, which he called "a significant fire." Id. at 45. He described the fire as "significant flames, smoke, smoke billowing…you can see the orange through the cell doors…[.]" Id. at 45. Lieutenant Newman could not see inside the cell because of the smoke. Id. at 47. Officer [Shane] Breakiron came with a fire extinguisher and put out the fire. Id. at 48, 91-92. Corrections Officer Brian Zampatti used a water cannon to assist with putting out the fire. Id. at 103-04.

The cells in the L block are side-by-side. Id. at 45. Mr. Maddox was in a single-bed cell; he was the only inmate being housed in the cell and was the only one present in the cell at the time the fire started. Id. at 46-47.

After the fire was put out, Lieutenant Newman ordered Mr. Maddox to come to the door. Id. at 49. Mr. Maddox came to the door; he was placed in handcuffs and let out of the cell. Id. at 49-50. Lieutenant Newman and others then took Mr. Maddox to a triage area. Id. at 50-51. Mr. Maddox refused treatment at the triage area and was then taken to a hospital by ambulance. Id. at 124-27.

According to Lieutenant Newman, the fire was started with a lighter, which was used to light the mattress on fire. Id. at 56-57. Inmates in the Restricted Housing Unit are allowed to have a mattress, a pillow, boxers, t-shirts, and a jumpsuit. Id. at 56.…[They] are not permitted to have lighters. Id.

While the fire was still burning, other inmates in the Restricted Housing Unit began pressing the emergency call buttons in their cells, saying that they couldn't breathe. Id. at 57. About fifteen to eighteen inmates were handcuffed and taken to the yard pens so that they could breathe. Id. at 57-58. It took about thirty minutes with ventilation fans for the smoke to clear so that the inmates could return to their cells. Id. at 58-59.

Patrick Hemlick, a security officer with SCI Fayette who handles investigations, testified that he was called to the scene of the fire the night of the incident to investigate. Id. at 111-13. Mr. Hemlick took pictures of the scene, including the burnt mattress and a security camera in Mr. Maddox's cell that had been covered up by wadded toilet paper. Id. at 114-15. Mr. Hemlick stated that the camera was covered so that nobody would be able to see what Mr. Maddox was doing. Id. at 115.

The estimated cost of the damages caused by the fire was $416.00. Id. at 131-32.

Mr. Maddox testified that he does not remember a lot from the day of the incident. [N.T., 11/6/18, at 34]. He said that he does not remember how the fire started. Id. He also testified that it was not his intention to cause problems or to cause harm to anyone else. Id.

Trial Court Opinion, filed 3/5/19, at 1-4.

A trial was held on November 5 and 6, 2018. When the trial began, Maddox was represented by the Fayette County Public Defender's Office. After the jury was selected and sworn in, Maddox informed the court that he wanted to fire his attorney and proceed pro se. N.T., 11/5/18, at 11. After conducting a colloquy on the record, the court granted Maddox's request to proceed pro se. Id. at 23. The court appointed Maddox's public defender to serve as standby counsel. Id. After the trial, the jury found Maddox guilty of one count of arson and one count of risking a catastrophe.

On November 13, 2018, the trial court sentenced Maddox to three to six years of incarceration, to run concurrent with the sentence Maddox was

already serving. On December 10, 2018, Maddox filed a timely notice of appeal.[2]

Maddox raises two issues for our review:

1. Whether the evidence was legally and factually sufficient to prove that [Maddox] had the requisite intent to commit the crime of arson[?]

2. Whether the evidence was legally and factually sufficient to prove that [Maddox] risked a catastrophe when the fire was contained in one cell with no way for the fire to spread[?]

Maddox's Br. at 4.

When reviewing a challenge to the sufficiency of the evidence, our standard of review is de novo, while "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." Commonwealth v. Rushing, 99 A.3d 416, 420-21 (Pa. 2014). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Commonwealth v. Dix, 207 A.3d 383, 390 (Pa.Super. 2019). "[T]he finder of fact is free to believe all, part, or none of the evidence presented in judging the credibility of the

_____

[2] The trial court appointed the Fayette County Public Defender's Office to represent Maddox in this appeal.

witnesses and the weight to be afforded the evidence produced." Commonwealth v. Henkel, 938 A.2d 433, 438 (Pa.Super. 2007). Additionally, "this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." Commonwealth v. Smith, 146 A.3d 257, 261 (Pa.Super. 2016).

Maddox first asserts that there was insufficient evidence to support his conviction for arson. This offense is defined, in relevant part, as follows:

> (a) Arson endangering persons.--
>
> (1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:
>
> (i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire[.]

18 Pa.C.S.A. § 3301(a)(1)(i). A conviction for arson requires that the Commonwealth establish three elements: "(1) that there was a fire; (2) that it was of incendiary origin; and (3) that appellant set the fire." Commonwealth v. Ford, 607 A.2d 764, 766 (Pa.Super. 1992). Further, "[i]t is well established that a conviction for arson may be based solely on circumstantial evidence." Id.

Maddox contends that the evidence presented at trial was insufficient to show that he had the requisite intent to commit the crime of arson. Maddox's

Br. at 7-8. Specifically, Maddox asserts that he had no intention of hurting anyone or placing any others in danger; rather, his intention was to commit suicide. Id. at 6. Maddox's argument is without merit.

The crime of "arson endangering persons" only requires that a person intentionally start a fire, which then recklessly places another person in danger of death or bodily injury. 18 Pa.C.S.A. § 3301(a)(1)(i). Pursuant to the plain language of Section 3301(a)(1)(i), the intent to endanger others is not a necessary element of arson; rather, the intentional setting of a fire must merely result in recklessly placing another in danger of death or bodily injury. Id.

Here, the evidence presented at trial demonstrated that there was a fire in Maddox's cell. N.T., 11/5/18, at 47. Maddox was alone in his cell when the fire broke out. Id. at 46-47. There was no evidence presented at trial that someone other than Maddox started the fire. Lieutenant Newman testified that the fire was started by a lighter. Id. at 56-57. Lighters were not permitted in the Residential Housing Unit. Id. at 56. The evidence at trial also showed that the mattress in Maddox's cell was placed directly next to the cell door and was set on fire. Id. at 55-57. Further, Maddox covered the camera in his cell with toilet paper prior to starting the fire, which shows that he did not want the guards to see what he was doing. Id. at 115.

The Commonwealth also presented evidence that the other inmates were housed in cells very close to Maddox's cell. Id. at 42-45. There was testimony that the other inmates pressed the emergency call buttons in their

cells after the fire was started and said that they couldn't breathe. Id. at 57, 66. Lieutenant Newman described the fire as a very significant fire with a lot of smoke. Id. at 47-48. Corrections Officer Breakiron testified that smoke was "everywhere" and that he had trouble breathing. Id. at 94. Corrections Officer Zampatti also testified that there was a lot smoke and that Maddox's cell was completely filled up with smoke. Id. at 106.

Further, Nurse Leslie Heisler, the prison's registered nurse, testified that after the fire, Maddox told her that he was trying to kill himself. Id. at 125. Maddox himself testified that he intended to harm himself. N.T., 11/6/18, at 34. Specifically, Maddox testified:

> The day of the incident, I don't recall a lot from that day....I do know that my intentions weren't to hurt anybody besides myself. My intentions weren't to cause problems or hurt for anyone else. At the time, I just didn't, you know, I didn't want to be where I was anymore.

Id.

After reviewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to find that Maddox had the requisite intent to commit the crime of arson. Additionally, his actions in starting the fire recklessly placed the other inmates and prison staff in danger of bodily injury or death. Therefore, we find that the evidence was sufficient to establish the offense of arson under Section 3301(a)(1)(i).

Next, Maddox argues that there was insufficient evidence to support his conviction for risking a catastrophe. Specifically, Maddox contends that the

fire was contained to his cell and the only items that were set on fire were Maddox's mattress, pillow, and jumpsuit. Maddox's Br. at 8. Maddox argues that everything else in the cell was metal and therefore, was not flammable. Id. Maddox further asserts that the fire could not have spread outside of his cell because the cells were constructed of concrete and metal. Id. He maintains that due to the construction of the building, there was no way for the fire to injure anyone else in the building. Id. at 9. Maddox is entitled to no relief.

The offense of risking a catastrophe is defined as follows:

A person is guilty of a felony of the third degree if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section.

18 Pa.C.S.A. § 3302(b). The "other dangerous means" listed under subsection (a) include, "explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means of causing potentially widespread injury or damage[.]" 18 Pa.C.S.A. § 3302(a). The "risk" proscribed by Section 3302 has been described as "the use of dangerous means by one who consciously disregards a substantial and unjustifiable risk and thereby unnecessarily exposes society to an extraordinary disaster." Commonwealth v. McCoy, 199 A.3d 411, 417 (Pa.Super. 2018) (quoting Commonwealth v. Hughes, 364 A.2d 306, 311 (Pa. 1976)). Further, "a person can be guilty of risking a

catastrophe even where no catastrophe occurs[.]" Commonwealth v. Karetny, 880 A.2d 505, 522 (Pa. 2005).

Here, the evidence presented at trial demonstrated that Maddox started a fire in a densely populated prison. There was testimony at trial that the fire was significant and that there was intense smoke. N.T., 11/5/18, at 47-48, 94. The smoke had spread to neighboring cells where other inmates were housed. Id. at 57, 94. The jury was shown a video of the fire, which showed smoke coming out of Maddox's cell and into other cells. Id. at 54, 57; Commonwealth Exh. 1. Lieutenant Newman testified that the emergency call buttons in the other inmates' cells were "going off like crazy" during the fire. N.T., 11/5/18, at 57. The inmates complained of not being able to breathe. Id.

There was also testimony presented that fifteen to eighteen inmates had to be handcuffed and escorted outside of the prison due to the fire. Id. at 58. The fire and smoke put those inmates, as well as the prison staff, at risk of serious bodily injury. The inmates were not free to leave their cells and therefore had no way to leave unless the prison staff escorted them out. If the fire had spread or the inmates had not been evacuated from the building, they could have suffered severe injuries or death due to the fire or to smoke inhalation. Contrary to Maddox's assertion, there was no evidence presented at trial that there was "no way for the fire to spread." Maddox's Br. at 4. Instead, there was ample evidence presented that the smoke from the fire spread throughout the prison into other inmates' cells causing them to be

unable to breathe. Accordingly, we conclude that there was sufficient evidence to establish that Maddox committed the offense of risking a catastrophe by recklessly starting a fire in which widespread injury or death could have occurred. Thus, we reject Maddox's claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2019